IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:15CV70

| | |
|---|---|
| KENNETH D. BELL, in his capacity as court-appointed Receiver for Rex Venture group, LLC d/b/a ZeekRewards.com, ) ) ) ) ) | |
| Plaintiff, ) ) | |
| vs. ) ) | ORDER |
| HAMISH BROWNIE, PRAVEEN KUMAR, and DAVID IAN MACGREGOR FRASER, ) ) ) ) | |
| Defendants. ) ) | |

This matter is before the Court upon Defendant David Ian MacGregor Fraser's Motion to Dismiss and Quash Service of Process for Lack of Personal Jurisdiction. (Doc. No. 6). The Receiver has filed a response in opposition to this motion but Defendant Fraser has not filed a Reply.

**FACTUAL BACKGROUND**

This is one of several "clawback" actions instituted by the Receiver of Rex Venture Group, LLC ("RVG") against Net Winners in the ZeekRewards scheme. The Complaint alleges as follows: Paul Burks, the owner and former top executive of RVG, and other management insiders used RVG in their operation of a massive Ponzi and pyramid scheme through ZeekRewards ("Zeek") from at least January 2011 until August 2012. Compl. at ¶¶ 1, 6–9. Over 700,000 participants lost over $700 million dollars in the scheme. *Id*. at ¶ 1. Burks and the management insiders used ZeekRewards to promise substantial payouts and outsize returns to all participants, but few actually benefitted. *Id*. at ¶ 2. Those who did benefit were paid not with

1

profits from a legitimate retail operation, but rather from money paid in by later investors in the scheme. *Id*. at ¶ 3. The largest "net winners" (those who received more money from Zeek than they paid in to Zeek) each received well over a million dollars, and many others received hundreds of thousands of dollars. *Id*. at ¶ 2. Defendant Fraser was a "net winner" of $89,722.00. *Id*. at ¶ 14.

On August 17, 2012, the Securities and Exchange Commission filed an action in this Court, *Securities and Exchange Commission v. Rex Venture Group, LLC d/b/a ZeekRewards.com and Paul Burks*, Civil Action No. 3:12-cv-519 (the "SEC Action"), to obtain injunctive and monetary relief against Paul Burks, shut down the ZeekRewards Ponzi and pyramid scheme, freeze RVG's assets, and seek appointment of a Receiver for RVG. Compl. at ¶ 15. Also on August 17, RVG, through Burks, admitted to this Court's jurisdiction over RVG and the subject matter of the SEC action, and it consented to entry of judgment in favor of the SEC. SEC Action, Doc. No. 5 at ¶¶ 1–2. As a result, the Court entered consent judgments against RVG and Burks enjoining them from violating the federal securities statutes or participating in, or facilitating, the solicitation of any investment in any security or in the offering of a security. SEC Action, Doc. Nos. 6, 8.

That same date, in an Agreed Order Appointing Temporary Receiver and Freezing Assets of Defendant Rex Venture Group, LLC (the "Agreed Order"), this Court appointed Kenneth D. Bell as the Receiver over the assets, rights, and all other interests of the estate of Rex Venture Group, LLC, d/b/a www.ZeekRewards.com and its subsidiaries and any businesses or business names under which it does business (the "Receivership Entities"). Compl. at ¶ 16. The Order further directed Mr. Bell as RVG's Receiver to institute actions and legal proceedings seeking the avoidance of fraudulent transfers, disgorgement of profits, imposition of constructive trusts

and any other legal and equitable relief that the Receiver deems necessary and appropriate to preserve and recover RVG's assets for the benefit of the Receivership Estate. *Id*.

Like all classic Ponzi and pyramid schemes, the vast majority of the Zeek winners' money came from the Zeek losers rather than legitimate business profits. At least $845 million was paid in to Zeek. *Id*. at ¶ 3. No more than $6.3 million (less than 1%) came from retail bid purchases by non-participants. *Id*. In total, the Zeek database records show that over 92% of the money paid in to Zeek came from net losers rather than net winners, and Zeek's net winners received over $283 million in net winnings. *Id*.

Because Zeek's net winners "won" the victims' money in an unlawful combined Ponzi and pyramid scheme, the net winners are not permitted to keep their winnings and must return the fraudulently transferred winnings to the Receiver for distribution to Zeek's victims. *Id*. at ¶ 4. Accordingly, the Plaintiff Receiver filed this "clawback" action on February 11, 2015, asserting claims of relief against Defendants for: (1) Fraudulent Transfer of RVG Funds in Violation of the North Carolina Uniform Fraudulent Transfer Act; (2) Common Law Fraudulent Transfer; and (3) Constructive Trust. Defendant Fraser has moved to dismiss this action against him for lack of personal jurisdiction.

Defendant Fraser signed up with ZeekRewards in November 2011. RVG records show that on November 4, 2011 he created a user account on the ZeekRewards website and typed in a username, his actual name, his address, phone number, credit card information, and other details. He also purchased $500 in VIP/Sample bids from ZeekRewards. Fraser was a net winner of nearly $90,000, and he ultimately built a downline of 96 paying members during the course of the scheme, with 80 of these members losing money (a total of $131,063.95). *See* Receiver's

Response in Opposition to Defendant David Ian MacGregor Fraser's Motion to Dismiss, Exhibit A (Affidavit of Michael Busen ("Busen Affidavit")).

RVG made known to anyone interested in the ZeekRewards program that the company was based in North Carolina, in the United States of America. At the top of the ZeekRewards homepage, where Defendant Fraser logged in every day, there was a conspicuous "About Us" link, which disclosed that that the company was headquartered in Lexington, North Carolina. *See* Busen Affidavit at Exhibit 2. Moreover, the ZeekRewards homepage indicated that it operated on "east coast USA time," and dealt in United States currency. *Id*. at Exhibits 2 and 4. In other words, it was no secret that ZeekRewards operated out of the state of North Carolina.

From the day he signed up with ZeekRewards, Defendant Fraser actively directed efforts and attention to ZeekRewards, in North Carolina, every day until the scheme's collapse in August 2012. Starting on November 4, 2011 and continuing through August 16, 2012, when ZeekRewards was shut down, Fraser logged into his "back office" page to report his having met the so-called daily "advertising" requirement. *See id*. at Exhibit 5. In addition, on a frequent, often weekly basis, Defendant Fraser logged in to the ZeekRewards site to request a cash-out payment from the scheme. These payments came from ZeekRewards' account at a bank in North Carolina and all the money Defendant Fraser requested and received from ZeekRewards was stated in US dollars. *See* Busen Affidavit at Exhibit 6. Moreover, Defendant Fraser also directed his actions to North Carolina through the ZeekRewards site by frequently changing the allocation of his daily "Retail Profit Pool" ("RPP") payouts between the repurchase of VIP bids and "available cash." *See* Busen Affidavit at Exhibit 7.

**DISCUSSION**

In response to a motion challenging jurisdiction under Rule 12(b)(2), a plaintiff must prove the existence of personal jurisdiction by a preponderance of the evidence. *New Wellington Fin. Corp. v. Flagship Resort Dev. Corp.*, 416 F.3d 290, 294 (4th Cir. 2005). However, if the court does not conduct an evidentiary hearing and relies instead only on the pleadings and affidavits alone, plaintiff need only make a prima facie showing of jurisdiction. *In re Celotex Corp.*, 124 F.3d 619, 628 (4th Cir. 1997). In determining whether a plaintiff has made a prima facie showing, this Court "must construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction." *Universal Leather, LLC v. Koro AR, S.A.*, 773 F.3d 553, 558 (4th Cir. 2014) (quoting *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989)).

This Court can exercise personal jurisdiction over Defendant Fraser to the full extent that he would be subject to jurisdiction under North Carolina law. *See* Fed. R. Civ. P. 4(k)(1)(A); *see also Daimler AG v. Bauman*, 134 S. Ct. 746, 753 (2014) ("Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons."). In North Carolina, a defendant is subject to jurisdiction if he comes within any of the broad enumerated bases of the long-arm statute, N.C. Gen. Stat. § 1-75.4, and the exercise of personal jurisdiction over the defendant would "not violate the requirements of the Due Process clause of the Fourteenth Amendment." *Brown v. Ellis*, 678 S.E.2d 222, 223 (N.C. 2009).

Under North Carolina law, the breadth of personal jurisdiction that can be asserted under § 1-75.4 extends to "any defendant who meets the minimal contact requirements of *International Shoe Co. v. Washington*, 326 U.S. 310 (1945)." *See Western Steer-Mom 'N' Pop's, Inc. v. FMT Invest., Inc.*, 578 F. Supp. 260, 264 (W.D.N.C. 1984) (citation omitted). The Fourth Circuit

recently confirmed its interpretation of North Carolina's long-arm statute, holding that the issue of jurisdiction under N.C. Gen. Stat. § 1-75.4(1)(d) "merges the two-prong test "into the single question" of whether a defendant has "sufficient contacts with North Carolina to satisfy constitutional due process." *Universal Leather*, 773 F.3d at 558-59. Due Process is satisfied for personal jurisdiction purposes if a defendant has "purposefully availed itself of the privilege of conducting business in the forum state" by establishing sufficient "minimum contacts such that maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475-76 (1985); *see also International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). Under the Due Process Clause, personal jurisdiction over a defendant may be found either through specific jurisdiction based on conduct connected to the suit or by finding general jurisdiction. *See Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2851 (2011).

The Receiver is asserting personal jurisdiction over Defendant Fraser through specific jurisdiction because this lawsuit arises out of his contacts with North Carolina. Where, as here, specific jurisdiction is asserted based on electronic activity by a defendant, a State may, consistent with due process, exercise judicial power over a person outside of the State when that person (1) directs electronic activity into the State, (2) with the manifested intent of engaging in business or other interactions within the State, and (3) that activity creates, in a person within the State, a potential cause of action cognizable in the State's courts. *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 714 (4th Cir. 2002). In *ALS Scan*, the Fourth Circuit adopted and adapted the test from *Zippo Manufacturing Co. v. Zippo Dot Com, Inc.*, 952 F.Supp. 1119, 1124 (W.D.Pa. 1997), which recognized a "sliding scale" of the nature and quality of commercial activity for defining when electronic contacts with a State are sufficient:

> At one end of the spectrum are situations where a defendant clearly does business over the Internet. If the defendant enters into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the Internet, personal jurisdiction is proper. At the opposite end are situations where a defendant has simply posted information on an Internet Web site which is accessible to users in foreign jurisdictions. A passive Web site that does little more than make information available to those who are interested in it is not grounds for the exercise [of] personal jurisdiction. The middle ground is occupied by interactive Web sites where a user can exchange information with the host computer. In these cases, the exercise of jurisdiction is determined by examining the level of interactivity and commercial nature of the exchange of information that occurs on the Web site.

*Id.* (internal citations omitted)

In *Havey v. Valentine*, 172 N.C.App. 812 (2005), the North Carolina Supreme Court adopted the Fourth Circuit's *ALS Scan* personal jurisdiction test for internet communications.

In the specific context of foreign defendants, in determining the presence of "minimum contacts," the defendant's actions or connection need only be more than random, fortuitous, or attenuated. *Caraustar, Inc. v. Sockert.com, LLC*, 2006 WL 2224291, at *2-4 (W.D.N.C. 2006). Factors to be considered in assessing contacts with the forum state include: (1) the quantity of the contacts, (2) the nature and quality of contacts, (3) the source and connection of the cause of action with those contacts, (4) the interests of the forum state and convenience, and (5) whether the defendant invoked benefits and protections of the law of the forum state. *General Latex & Chem. Corp. v. Phoenix Medical Technology, Inc.*, 765 F. Supp. 1246, 1249 (W.D.N.C. 1991).

Defendant Fraser has dual citizenship in Great Britain and New Zealand. In his affidavit, Fraser claims that his sole contact with this jurisdiction was through his personal use of the ZeekRewards website from his home in Malaysia. He claims that at the time he discovered ZeekRewards, he was unaware that the website originated in North Carolina. Fraser argues that although the ZeekRewards website happened to originate in North Carolina, he did not purposely

7

avail himself of the privilege of doing business in North Carolina, nor did he direct activities into this state or manifest an intent to do so.

Contrary to Defendant Fraser's protestations, his repeated, consistent and extensive contacts with the ZeekRewards program in North Carolina are more than sufficient to satisfy the standard of "minimum contacts" based on specific jurisdiction. Indeed, this case is at the very end of the *Zippo* spectrum "where a defendant clearly does business over the Internet" and "personal jurisdiction is proper." Defendant Fraser voluntarily and intentionally signed up for a scheme stated to be "headquartered" in North Carolina and then had daily purposeful interaction with the scheme, including ad placement notifications, "playing the game" by requesting particular allocations between "bid purchases" and "available cash," and directing the payment of over $90,000 to his account. Thus, Fraser's conduct "involve[d] the knowing and repeated transmission of computer files over the Internet." *Zippo*, 952 F. Supp. at 1124. Moreover, it is these contacts with North Carolina, including the repeated requests and payments of money by and to Fraser in and from North Carolina, which are the genesis of the claims against him in this action. Thus, Fraser satisfies all the elements of the *ALS Scan* test. *See ALS Scan*, 293 F.3d at 714.

North Carolina has a clear interest in supporting the Receivership of a company headquartered in North Carolina so that legitimate claims can be made against those who came into North Carolina (either physically or electronically) and profited at the expense of the company's victims. North Carolina has an interest in both protecting victims of unlawful schemes in the state and discouraging those who might try to profit from such schemes (whether with direct knowledge of the wrongdoing or simply participating in a program "too good to be true").

Moreover, Defendant Fraser invoked the benefits and protections of the law of North Carolina by his intentional interactions and requests for funds in connection with the ZeekRewards program. Had he lost money like the 80 victims he recruited to the scheme, Fraser would have been able to seek the protection of the North Carolina laws being asserted to protect those involved in the scheme – as a number of the victims he recruited to the scheme have already done. Finally, the efficient resolution of this controversy in one forum rather than multiple suits in other countries weighs heavily in favor of this Court exercising personal jurisdiction over Fraser and the other international net winners who intentionally participated in and profited from a scheme advertised as "headquartered" in North Carolina.

Not only does the Court find that Defendant Fraser has the requisite minimum contacts with North Carolina to satisfy specific jurisdiction, but also finds that the exercise of personal jurisdiction over Fraser is fair and just. Fraser voluntarily and intentionally sought to be a part of ZeekRewards in the hopes of making money here in North Carolina (whether he did it in person or through a computer). Even if Fraser had no actual knowledge that he was doing business in North Carolina, he cannot avoid personal jurisdiction by allegedly putting his head in the sand and failing to simply click on the "About Us" link displayed on the website which identified RVG's headquarters and offices in North Carolina. Personal jurisdiction in this case is not found based on the ZeekRewards website being simply "available" in North Carolina or used passively by Fraser. Rather, this Court has personal jurisdiction because of Fraser's admitted choice to voluntarily participate in Zeek's interactive website. Fraser did business with a North Carolina based company, requested payments (which came from a North Carolina bank) and sought and obtained profits from his participation in the scheme. Fraser knew or should have known that if he purposefully availed himself of an opportunity to make money in North Carolina (whether or

not he cared to find out the location of the scheme) that any claims related to his participation might be brought in a court in North Carolina. To hold otherwise would be to allow individuals outside the state to intentionally come to North Carolina electronically and engage in conduct that subjects them to claims but effectively avoid liability because of the distance and cost of pursuing them outside of North Carolina. Accordingly, it is both fair and just for this Court to exercise jurisdiction over Defendant Fraser based on his intentional, repeated and extensive participation in the ZeekRewards scheme in North Carolina.

IT IS THEREFORE ORDERED that Defendant David Ian MacGregor Fraser's Motion to Dismiss and Quash Service of Process for Lack of Personal Jurisdiction is hereby DENIED.

Signed: February 4, 2016

Graham C. Mullen
United States District Judge